Wyly, J.
This is an injunction taken out by plaintiff, to restrain her husband’s judgment creditor, Artemus Hill, from selling two lots and improvements in Algiers, which she alleges is her paraphernal property, the same having been bought by her, in the month of May, 1855. The deed was passed before H. Paul Caire, Notary, and was not recorded till after the seizure, to wit: 2nd February, 1866.
Plaintiff was a married woman at the time the purchase was made in her name, and w'as duly authorized thereto, by her husband Charles W. Wilson. The act of sale recites that she paid $200 00 cash, “out of funds belonging to her personally,” and executed her note to the vendor for $150 00, the balance of the price.
In January, 1866, this property was seized by the sheriff to satisfy the judgment of the defendant, Hill v. Her Husband, Wilson, rendéreu on the 10th of November, 1865.
On the trial there was judgment perpetuating the injunction, and decreeing the defendant Hill, to pay $500 00 damages and costs. Defendant has appealed.
On a careful examination of the record, we find that only two witnesses were introduced by plaintiff to prove that the funds with which she bought the property in question was her separate funds; and their evidence is not conclusive. They do not testify that the funds paid by plaintiff, were actually her separate funds, administered by her.
Watkins testifies that he has known plaintiff since 1853, that “her brother gave her money for the purpose of buying a house for herself. I saw him give her the money; it was in gold, but I don’t recollect the exact amount. He said he gave it to her, for the purpose of buying her a home. It was somewhere about $400 00 or $500 00. This money was given her in 1853.” Cross-examined, he said, “I did not see the money that I have spoken of counted, and I do not know the exact amount, but-I saw the money handed to Mrs. Wilson.” (See Record, pages 67, 68, 69, 70.)
*532 Abel Rollins, sworn for plaintiff, says: “I know Mrs. Shaw, plaintiff, and have known her twenty years, I am not exactly related, but I have been acknowledged and considered by our friends,-relatives, etc., as her brother. I have acknowledged her a-> my sister. I knew of the -purchase of property by Mrs. Shaw. I gave'her at one time $500 00, with the understanding that she was to purchase a lot in Algiers, as she said.This -was before she purchased the propert She afterward purchased it. She has lived there all the time since, and I have frequently been in and out of it. She built a house on it, etc.” This witness further states, on cross-examination, “I am a blood relative of Mrs. Shaw, her mother and mine are some how mixed up, and we are not exactly brother and sister, but are related. I can state nothing more definite in regard to my relationship, etc.” (See Record, pages 89 and 90.)
According to the testimony of these witnesses, Mrs. Shaw received about $¿00 00 from Rollins in 1853, for the purpose of buying her a lot in Algiers. But she did not purchase the property involved in this litigation till the Ith of May, 1855, at least 16 months thereafter. There is no positive proof that she used the gold, the identical funds, presented to her by Rollins, in the purchase of the property.
• There is an' allegation in plaintiff’s petition, that she purchased the property with-her separate funds, but there is no allegation that she had the administration of her paraphernal funds with which she bought the property. She does not claim t.o have had the separate administration of the $500 00 from the time Rollins gave it to her in 1853, till the time of the purchase in May, 1855; and there is no proof on this material point.
She was a married woman not separate in property, and the community of acquets and gains existed between her and her husband, of which he was the head and master. All property acquired, during marriage, whether in the name of the one or other of the spouses, is considered community, and the debts contracted during marriage belong to the community or are chargeable to it. C. C., 2371, 2372. This is the general rule. “This court has often recognized an exception to this general rule in relation to the purchase of property in the name of the wife, when it is paid for, with her paraphernal funds under her separate administration, or when it is received as a elation en payement made to her by a debtor for a separate and paraphernal claim-of hers, the property does not belong to the community, but she becomes the separate and exclusive owner of it.” 12 R'. 579, 580, 581 and 582, and the authorities there cited.
We fully recognize the right of the wife to invest her paraphernal funds, while in the administration of her paraphernal property, as a legitimate investment of money under her separate control. But in order to acquire separate or paraphernal property by purchase during the marriage, the wife must show that she has purchased the same in her own name, with paraphernal funds under her separate administration.
We do not think the plaintiff in this case has established this material fact. Indeed, under the allegations of her petition, she could not introduce proof if objected to, that she was administering her paraphernal funds, separately from her husband. The mere declaration in the act of Bale does not relieve the wife from the burden of proving that the pur *533 chase was made with her separate funds under her own administration. 18 A., 126.
We are of opinion that the note executed by the wife to the vendor for $150 00, the balance of the price, was a community debt. O. 0., 2372.'
And from the law and evidence, we are bound to conclude that the property involved in this suit, belongs to the community, and is not the separate or paraphernal property of plaintiff, and that the injunction-must be dissolved.
It is therefore ordered, adjudged, and decreed, that the judgment of the court below be avoided and annulled, and it is now ordered that there be judgment in favor of defendant dissolving the injunction taken out by plaintiff in this case, at the costs of plaintiff.